UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

JAMES LIDESTRI,

Plaintiff,

- against -

AUDREY BURNS,

Defendant.

-------------------------------------------------------- X

**COMPLAINT**

**Case No. 25-cv-1166**

**ECF Case**

Plaintiff, JAMES LIDESTRI, by and through his attorneys, BRILL LEGAL GROUP, P.C., complains of the defendant as follows:

**PRELIMINARY STATEMENT**

1. This defamation, libel and slander action is brought in response to the malicious campaign of public lies Audrey Burns engaged in through a series of conversations with reporters for the *New York Times* ("*the Times*"), which ultimately led to Ms. Burns knowingly and intentionally causing and allowing these vicious lies about James Lidestri ("Mr. Lidestri") to be published in *the Times* in a devastating investigative journalism article that was published across *the Times'* multiple print and internet platforms and widely promoted to its users and viewers alike.

2. In sum and substance, Ms. Burns falsely claimed that when she was a child, James Lidestri drugged her, raped her and paid her off, knowing that what she was saying was completely and totally false, and with the full intention of destroying his good name.

3. Mr. Lidestri brings this action to hold Ms. Burns accountable for making the vicious false statement to millions of people that he drugged her, raped her, and paid her off when she was a child.

**PARTIES, JURISDICTION AND VENUE**

4. Plaintiff is an individual resident of the State of New York.

5. Defendant is an individual resident of the State of Oklahoma.

6. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7. Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this judicial district and a substantial portion of the events giving rise to the claims asserted in this action occurred in this judicial district.

**JURY DEMAND**

8. Plaintiff demands a trial by jury in this action on each and every one of his claims.

**STATEMENT OF FACTS**

9. Between December 15, 2024 and December 28, 2024, reporters from *the Times* contacted Mr. Lidestri and his attorneys to discuss allegations made by Ms. Burns that were to be part of a forthcoming article. Mr. Lidestri was not even going to be the focus of that article; it was instead focused on men who use Instagram to develop grooming relationships with child models.

10. As part of that article, however, the reporters spoke with earlier online models, one of whom was Ms. Burns, who had suffered from years of emotional and mental issues and substance abuse. The reporters then contacted Mr. Lidestri for a response to Ms. Burns' false allegations.

11. In the December 30, 2024, article, Ms. Burns was depicted in the article in the photo and caption below:



Audrey Burns said she was sexually assaulted as a minor after she traveled for a photo shoot. Desiree Rios for The New York Times

12. Among Ms. Burns' statements to *the Times* reporters were the following: Ms. Burns said that when she was 16 years old, she traveled to New York with her mother and they went to Mr. Lidestri's house for a photo shoot. While there, Mr. Lidestri gave her a drink which left her feeling strange, after which he sexually assaulted her with his hands and mouth. He then provided her more money than what had previously been arranged for the photo shoot. Ms. Burns allegedly provided a photo to the reporters purportedly showing at least $1,000 in cash from that trip as alleged proof of her story. She allegedly posted photos of her trip to Facebook.

13. The portion of Ms. Burns' statement that was published in *the Times* article (the "Lidestri Article") was as follows:

> Another woman, Audrey Burns, now 28, said Mr. Lidestri sexually assaulted her when she visited him in New York for a photo shoot. At the time, she said, her life was chaotic, and she had lived for a while with her mother in a shelter in Oklahoma.
>
> She started working for Mr. Lidestri when she was 14, she recalled, and later traveled to New York with her mother. Photos she shared on Facebook from the trip included separate images of Mr. Lidestri and at least 10 $100 bills. They were posted in April 2013, when she was 16.
>
> Mr. Lidestri offered her money beyond what she had been paid for the photo shoot, Ms. Burns said. He then sexually assaulted her with his hands and mouth, she said. "He asked if I wanted to stop, and I couldn't speak," she said. "I was catatonic."
>
> ..................
>
> All three women said they remained quiet when younger because they felt powerless, because they needed the money or because Mr. Lidestri said they or their parents could get in trouble.

14. In sum and substance, Ms. Burns falsely claimed to the world, using the megaphone of *the New York Times*, that when she was a child, James Lidestri drugged her, raped her and paid her off, knowing that what she was saying was completely and totally false, and with the full intention of destroying his good name.

15. On December 30, 2024, on her public Facebook profile, which was accessible to anyone who chose to visit it[1], Ms. Burns posted the below post, further amplifying *the Times* story and her lies contained therein:




This post, which amplified the reach of Ms. Burns' libelous statements in *the Times* article, received six comments, was seen an unknown number of times by Facebook users, and led to an unknown additional amount of visits to *the Times* article and Ms. Burns' libelous statements therein.

[1] https://www.facebook.com/profile.php?id=61567917177972, visited February 1, 2025.

16. Not only were Ms. Burns' statements false, but they beggared belief. If, as Ms. Burns claimed, her mother accompanied her to New York, didn't she stay for the photo shoot itself? If not, where had she gone during the shoot? And why would her mother accompany her daughter all the way to New York and then abandon her daughter to be alone with a grown man for a photo shoot? How was it even possible if they didn't have transportation of their own? Even if it had been possible, when her mother returned to the house after the photo shoot, how would she have she failed to immediately notice her own daughter under the influence of alcohol and/or drugs and in a "catatonic" state? How could they go back to their hotel, travel all the way back to the airport, wait at the airport for their flight, then travel all the way home to another state with nothing discussed between the two as to what Ms. Burns now alleges happened, let alone for *decades* after? And why did Ms. Burns eagerly continue to work with Mr. Lidestri for two more years after this supposedly traumatic event? Despite the complete ludicrousness of this tale, *the Times* published it anyway, accepting fantastical claims from a source with ulterior motives.

**FIRST CLAIM FOR RELIEF**
**(Defamation)**

17. Plaintiff re-alleges and incorporates paragraphs 1 through 15.

18. Ms. Burns published or caused to be published false and defamatory statements in *the Times*, which did and had the tendency to expose Mr. Lidestri to hatred, contempt, ridicule and/or disgrace.

19. The defamatory statements in the Lidestri Article are of and concerning Mr. Lidestri, and reasonably understood to be about Mr. Lidestri.

20. The defamatory statements in the Lidestri Article are false.

21. Ms. Burns caused the defamatory statements in the Lidestri Article to be published knowing that they are false or with reckless disregard for the truth of the statements.

22. The defamatory statements in the Lidestri Article constitute defamation *per se* because they tended to injure Mr. Lidestri in his trade, business or profession and directly implicated Mr. Lidestri in a horrific crime; specifically, that he drugged and raped a child and then paid her off.

23. In light of Mr. Lidestri's standing in the community, the nature of the statements made about him, the extent to which those statements were circulated, and the tendency of such statements to injure someone such as Mr. Lidestri, the defamatory statements in the Lidestri Article have directly and proximately caused Mr. Lidestri to suffer significant damages, including damage to his reputation, humiliation, embarrassment, mental suffering, shame and emotional distress.

24. These damages are ongoing in nature and will continue to be suffered in the future.

25. The re-publication of the defamatory statements in the Lidestri Article in other publications, as well as via the dissemination of the Lidestri Article through social media, including through Ms. Burns' own Facebook page, caused Mr. Lidestri to suffer additional damages, all of which were foreseeable to Ms. Burns.

26. Ms. Burns' conduct was committed knowingly, intentionally, willfully, wantonly and maliciously, with the intent to harm Mr. Lidestri, or in blatant disregard of the substantial likelihood of causing him harm, thereby entitling Mr. Lidestri to an award of punitive damages.

27. As a direct and proximate result of Ms. Burns' misconduct, Mr. Lidestri is entitled to compensatory, special and punitive damages in an amount to be proven at trial far in excess of $75,000.00.

## SECOND CLAIM FOR RELIEF
**Negligent Infliction of Emotional Distress**

28. Plaintiff re-alleges and incorporates paragraphs 1 through 26.

29. Ms. Burns' conduct was careless and negligent as to Mr. Lidestri's emotional health of and caused him severe emotional distress.

30. Ms. Burns' conduct was the direct and proximate cause of injury and damage to Mr. Lidestri and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

31. As a result of the foregoing, Mr. Lidestri was subjected to significant emotional pain and suffering, and was otherwise damaged and injured.

32. As a result of the foregoing, Mr. Lidestri suffered significant damages in an exact amount to be determined at trial but in no event less than Two Hundred Fifty Thousand ($250,000.00) Dollars as to Ms. Burns.

**<u>THIRD CLAIM FOR RELIEF</u>**
**Intentional Infliction of Emotional Distress**

33. Plaintiff re-alleges and incorporates paragraphs 1 through 31.

34. Ms. Burns' conduct was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency.

35. Ms. Burns' conduct was intended to and did cause severe emotional distress to Mr. Lidestri.

36. Ms. Burns' conduct was the direct and proximate cause of injury and damage to Mr. Lidestri and violated his statutory and common law rights as guaranteed by the laws of the Constitution of the State of New York.

37. As a result of the foregoing, Mr. Lidestri was subjected to emotional pain and suffering, and was otherwise damaged and injured.

38. Ms. Burns' conduct was committed knowingly, intentionally, willfully, wantonly and maliciously, with the intent to harm Mr. Lidestri, or in blatant disregard of the substantial likelihood of causing him harm, thereby entitling Mr. Lidestri to an award of punitive damages.

39. As a direct and proximate result of Ms. Burns' misconduct, Mr. Lidestri is entitled to compensatory, special and punitive damages in an amount to be proven at trial far in excess of Two Hundred Fifty Thousand ($250,000.00) Dollars.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, James Lidestri, demands judgment against Defendant, Audrey Burns, as follows:

i. An award of compensatory, special and punitive damages in amounts to be established at trial as to the claim of defamation in excess of $75,000;

ii. An award of compensatory damages in an amount to be established at trial as to the claim of negligent infliction of emotional distress in excess of $250,000;

iii. An award of compensatory, special and punitive damages in amounts to be established at trial as to the claim of defamation in excess of $250,000.

iv An award of Plaintiff's costs associated with this action, including but not limited to her reasonable attorneys' fees and expenses; and

v. Such other and further relief as the Court deems just and proper to protect Plaintiff's rights and interests.

Dated: February 10, 2025
New York, New York

**BRILL LEGAL GROUP, P.C.**
*ATTORNEYS FOR PLAINTIFF*

By: ______________________
Peter E. Brill (PB0818)
176 Lexington Avenue
Suite O
New York, NY 10016
(212) 233-4141
pbrill@brill-legal.com