UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES LIDESTRI,

                Plaintiff,

        -against-

AUDREY BURNS,

                Defendant.

Case No.: 25-cv-1166

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

VERIDIAN LEGAL P.C.

Daniel S. Szalkiewicz, Esq.
Cali P. Madia, Esq.
23 West 73rd Street, Suite 102
New York, NY 10023
(212) 706-1007
daniel@veridianlegal.com
*Attorneys for Defendant*

1

## Table of Contents

Table of Authorities ................................................................................................ 3

PRELIMINARY STATEMENT ............................................................................... 5

STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT ........................... 6

ARGUMENT ........................................................................................................... 7

I.    Plaintiff Fails to Allege a Cause of Action for Intentional Infliction of Emotional Distress . 8

II.   Plaintiff Fails to Allege a Cause of Action for Negligent Infliction of Emotional Distress
      10

III.  Plaintiff Fails to Allege a Cause of Action for Defamation ............................... 12

   A.   The Statements Are Not Pleaded with Particularity and Contain Fabricated Statements  13

   B.   The Allegedly Defamatory Statements Are Not Published or Authored By Plaintiff ...... 14

   C.   The Allegedly Defamatory Statements Do Not Assert Plaintiff Claimed Lidestri Raped
   Her  15

   D.   Plaintiff's Silence Leads to Pleading Deficiencies ......................................... 16

   E.   Many of the Statements are Not Capable of a Defamatory Meaning, Not Concerning
   Plaintiff, and are True ........................................................................................ 16

   F.   The Statements Are Nonactionable because Plaintiff is a Public Figure and the Complaint
   Fails to Adequately Allege Malice. ...................................................................... 19

      1.   Plaintiff is a Public Figure. ......................................................................... 20

      2.   Plaintiff has not Plausibly Alleged Malice. ................................................. 22

   G.   New York anti-SLAPP Law Mandates Dismissal. ........................................... 23

   H.   The Amended Complaint Should be Dismissed for Lack of Jurisdiction over Defendant
      24

      1.   Plaintiff Fails to Obtain Jurisdiction over Defendant  Pursuant to CPLR 302(a)(1) .... 25

      2.   Plaintiff Has Not Alleged Defendant Was Present in New York to Establish
      Jurisdiction Pursuant to CPLR 302(a)(2) ...................................................... 26

      3.   Defendant Does not Derive Substantial Revenue from New York ............................ 27

CONCLUSION ....................................................................................................... 27

## Table of Authorities

**Cases**

1st Amendment Praetorian v. N.Y. Times Co., No. 1:23-cv-00012 (MKV), 2025 U.S. Dist. LEXIS 59133, at *19 (S.D.N.Y. Mar. 28, 2025) ...................................................... 23

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)................................................................... 7

Bell v Alden Owners, Inc., 299 AD2d 207, 209 (1st Dept 2002) .................................. 13

Best Van Lines, Inc. v Walker, 490 F3d 239, 244 (2d Cir 2007) .................................. 25

Biro v. Condé Nast, 807 F.3d 541, 544, aff'd 622 F. App'x 67 (2d Cir. 2015) .................. 20, 22

Black v Phoenix Cayman Ltd., 224 AD3d 494, 494 (1st Dept 2024) ........................... 25

Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 511 n.30 (1984) ........................... 20

Brimelow v. N.Y. Times Co., No. 21-66-cv, 2021 U.S. App. LEXIS 31672, at *3 (2d Cir. Oct. 21, 2021) ...................................................................................................................... 14

Catania v Liriano, 2021 NY Slip Op 34027[U] [Sup Ct, Bronx County 2021] ........................... 22

Coleman v Grand, 523 F Supp 3d 244, 255 (EDNY 2021)........................................... 20

Curtis Publ'g Co. v. Butts, 388 U.S. 130, 153 (1967) ................................................... 19

Dellaportas v. Shahin, 2024 U.S. Dist. LEXIS 141096, at *19 (S.D.N.Y. Aug. 7, 2024)............. 9

English v Avon Prods., Inc., 206 AD3d 404, 406 [1st Dept 2022] ................................. 25

Farber v Jefferys, 103 AD3d 514, 515 (1st Dept 2013).................................................. 21

Fischer v. Stiglitz, No. 15-CV-6266 (AJN), 2016 U.S. Dist. LEXIS 74842, at *6 (S.D.N.Y. June 8, 2016) ...................................................................................................................... 24

Francis v. Kings Park Manor, Inc., 992 F.3d 67, 70 (2d Cir. 2021) ............................. 11

Friedman v. Self Help Cmty. Servs., No. 11-CV-3210 (NGG) (JMA), 2015 U.S. Dist. LEXIS 32872, at *8 (E.D.N.Y. Mar. 17, 2015) ......................................................................... 11

Geddes v Princess Properties Intern., Ltd., 88 AD2d 835 [1st Dept 1982] ................. 13

Gertz v. Robert Welch, Inc., 418 U.S. 323, 333–34 (1974) ................................... 19, 22

Gill v. Giuliani, No. 23cv4087 (DLC), 2024 U.S. Dist. LEXIS 212208, at *12 (S.D.N.Y. Nov. 21, 2024) ...................................................................................................................... 9

Goldblatt v. Seaman, 225 A.D.2d 585, 586 (2d Dep't 1996) ....................................... 22

Gottwald v Sebert, 40 NY3d 240, 251-252 (2023)........................................................ 21

Jacobus v Trump, 55 Misc 3d 470, 474 [Sup Ct 2017], affd, 156 AD3d 452 [1st Dept 2017].... 17

James v. Flynn, 132 A.D.3d 1214, 1216 (App. Div. 3rd Dept. 2015) ........................... 10

Kesner v Dow Jones & Co., 515 F Supp 3d 149, 166 (SDNY 2021)............................... 8

Kingstown Capital Mgt. L.P. v CPI Prop. Group, S.A., 205 AD3d 467, 468 (1st Dept 2022) .... 26

Kinsey v The NY Times Co., 991 F3d 171, 174 (2d Cir 2021)........................................ 8

McCollum v. Baldwin, 688 F. Supp. 3d 117, 133 (S.D.N.Y. 2023)............................... 10

N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279–80 (1964) ........................................... 19

Palka v. Servicemaster Mgmt. Servs. Corp., 83 N.Y.2d 579, 590 (1994)..................... 12

Prince v The Intercept, 2023 US Dist LEXIS 119974, at *14 (SDNY July 12, 2023, No. 21-CV-10075 [LAP]).................................................................................................................. 22

Reid v. McKelvey, No. 22-CV-10708 (JGLC) (OTW), 2024 U.S. Dist. LEXIS 176975, at *12 (S.D.N.Y. Sep. 30, 2024)........................................................................................................ 10

Rivera v Capital One Fin. Corp., 2018 NY Slip Op 33045[U], *4 (Sup Ct, NY County 2018) .. 13

Russo v. Iacono, 73 A.D.2d 913, 913 (App. Div. 2nd Dept. 1980).............................................. 10

Santana v. Leith, 117 A.D.3d 711, 712, 985 N.Y.S.2d 147, 149 (App. Div. 2nd Dept.) ............ 10

Satanic Temple, Inc. v. Newsweek Magazine LLC, 661 F. Supp. 3d 159, 166 (S.D.N.Y. 2023) 24

SOS Capital v Recycling Paper Partners of PA, LLC, 220 AD3d 25, 33 (1st Dept 2023) ......... 26

SPCA of Upstate NY, Inc. v Am. Working Collie Assn., 18 NY3d 400, 405 [2012].................. 25

Specht v. City of N.Y., 15 F.4th 594, 606 (2d Cir. 2021)............................................................... 8

St. Amant v. Thompson, 390 U.S. 727, 731 (1968) ............................................................... 20, 23

Taggart v. Costabile, 131 A.D.3d 243, 249 (App. Div. 2nd Dept. 2015)............................... 11, 12

Three Amigos SJL Rest., Inc. v CBS News Inc., 28 NY3d 82, 86 [2016]................................... 17

Trakis v Manhattanville Coll., 51 AD3d 778, 781 (2d Dept 2008) ............................................ 13


**Statutes**

CPLR 302(a)(1) ........................................................................................................................... 25

CPLR 302(a)(2) ...................................................................................................................... 26, 27

N.Y. Civ. Rights Law § 76-a(2)................................................................................................... 23

**Treatises**

Prosser & Keeton, Torts § 12 at 56 (5th ed 1984) ...................................................................... 14

## PRELIMINARY STATEMENT

Plaintiff JAMES LIDESTRI ("Lidestri" or "Plaintiff") Second Amended Complaint (the "Complaint") brazenly admits that he photographed girls as young as 15 years old for his websites.  Lidestri's website, and how he "groomed" women into becoming his models, became the subject of two New York Times articles. On November 10, 2024, The New York Times in a piece entitled "She was a Child Instagram Influencer.  Her Fans Were Grown Men." covered the story of a fifteen-year-old girl who was paid $10,000 per month by Lidestri to take bikini photographs for his website "SelectSets[.]¹"  The New York Times describes the photographs contained on SelectSets as those toeing the line of child sex abuse material, with commenters describing the then-fifteen-year-old interviewee as "Submissive and breedable."  When contacted by The New York Times, Lidestri seemingly acknowledged his responsibility for the site, with The New York Times writing about their call with him "He said that he was a tech entrepreneur, no longer in the photography business, and had provided information to law enforcement about 'people who weren't playing by the rules.'"

On December 30, 2024, The New York Times ran another, similar piece entitled: "The Men Who Use Instagram to Groom Child Influencers²"  In this story three different women disclosed "alleged sexual misconduct by Mr. Lidestri."  Id..  One woman – not Defendant – indicated that, at seventeen, Lidestri paid her for intimate content "meant only for him" and disclosed their communications and her banking records.  The records detailed that Lidestri "mailed her the sex toy and said he would pay her every month if she sent him explicit content."  When she initially declined, he balked, writing "You don't want to make a few hundred dollars?"

---

¹ https://www.nytimes.com/2024/11/10/us/child-influencer.html, and annexed hereto as Exhibit 1.

² https://www.nytimes.com/2024/12/30/us/child-influencers-photographers-abuse.html and annexed hereto as Exhibit 2.

and "What are your alternatives?" before the teenager complied.  The New York Times interviewed yet another woman – also not Defendant – who, as a sixteen-year-old model, recalled asking Lidestri's permission to get a tattoo and him only allowing it after she posed for him naked (<u>Id</u>.).

None of these three women are being sued by Plaintiff; only Audrey, who reported being sexually assaulted by Lidestri – something which he apparently denies and argues harms his otherwise upstanding reputation.  Lidestri is suing Audrey for defamation, negligent infliction of emotional distress, and intentional infliction of emotional distress.

Plaintiff has twice filed amended complaints in an attempt to save his case. However, as discussed below, the First Amendment and New York law prevents lawsuits from abusers like Lidestri. While truth is an absolute defense to defamation, Lidestri's Second Amended Complaint is deficient and should be dismissed in its entirety.

## <u>STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT</u>

In his Second Amended Complaint, unlike his previous filings, Lidestri attempts to clarify his relationship with Audrey.  In 2001, Lidestri began "shooting nude photographs of adult female models" (<u>Complt. 17</u>) and then chose instead to start taking photographs of girls "under the age of 18[.]" <u>Complt. 18</u>.  Lidestri then posted these photographs on a subscription based website accessible to anyone 18 or older who held a valid credit card. <u>Complt. 26</u>.  Prior to meeting Burns, this website had at least 20 "models" ranging between the ages of 15 to 21 years. <u>Complt. 32</u>.  However, Lidestri did not discriminate in age, and would post images of girls who were less than 16 years old. <u>Complt. 32-33</u>.

In late 2012 or "early 2013" Lidestri learned of Burns and posted some of her photographs on his company's website. <u>Complt. 34-35</u>. According to Lidestri, on April 18, 2013, Burns and her mother flew to New York City to meet Lidestri for a two day photoshoot. <u>Complt. 39-40</u>. During this photoshoot, Lidestri denies having any contact with Burns or sexually assaulting her. <u>Complt. 45-48</u>. Lidestri then took two other photoshoots of Burns when she was under the age of 18; Lidestri denies any inappropriate touching during these shoots. <u>Complt. 55, 64</u>.

Lidestri's Second Amended Complaint offer little in the way of context and even less in the way of denials. Defendant's allegedly defamatory statement is contained in paragraph 79 of the Amended Complaint. The points relating to Plaintiff include:

- "Mr. Lidestri sexually assaulted her when she visited him in New York for a photo shoot"
- "She started working for Mr. Lidestri when she was 14"
- "Photos she shared on Facebook from the trip included separate images of Mr. Lidestri and at least 10 $100 bills. They were posted in April 2013, when she was 16. Mr. Lidestri offered her money beyond what she had been paid for the photo shoot, Ms. Burns said. He then sexually assaulted her with his hands and mouth, she said. 'He asked if I wanted to stop, and I couldn't speak,' she said. 'I was catatonic.'"
- "All three women said they remained quiet when younger because they felt powerless, because they needed the money or because Mr. Lidestri said they or their parents could get in trouble."

Notably, while The New York Times story makes no mention of Lidestri giving Defendant a drink or drugging her, Lidestri claims that Defendant has falsely broadcast to the world that "Mr. Lidestri did none of these things. He did not drug Ms. Burns, nor did he sexually assault her in any way". Complaint, 81, and annexed hereto as Exhibit 3; compared to Exhibit 2.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

"A complaint is properly dismissed where, as a matter of law, 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" Kesner v Dow Jones & Co., 515 F Supp 3d 149, 166 (SDNY 2021). For motion to dismiss purposes, the complaint is deemed "to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Kinsey v The NY Times Co., 991 F3d 171, 174 (2d Cir 2021). This Court has previously held that there "is particular value in resolving defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." Kesner, 515 F Supp 3d, at 166-167.

As detailed below, Plaintiff's Amended Complaint should be dismissed because the allegedly defamatory statements are legally insufficient and because Plaintiff has wholly failed to set forth facts supporting his intentional/negligent infliction of emotional distress claims.

## I.  Plaintiff Fails to Allege a Cause of Action for Intentional Infliction of Emotional Distress

This Court has held that,

> [t]o state an IIED claim, a plaintiff must plausibly allege the existence of (1) extreme and outrageous conduct, (2) an intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *See Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993). To meet this standard, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized" society.
> Specht v. City of N.Y., 15 F.4th 594, 606 (2d Cir. 2021)

"The conduct may consist of a single sufficiently extreme and outrageous act, or a series of acts that in isolation are not sufficiently extreme and outrageous but "taken together . . . amount to a deliberate and malicious campaign of harassment." Gill v. Giuliani, No. 23cv4087 (DLC), 2024

U.S. Dist. LEXIS 212208, at *12 (S.D.N.Y. Nov. 21, 2024) "Those few claims of intentional infliction of emotional distress that have been upheld by this court were supported by allegations detailing a longstanding campaign of deliberate, systematic and malicious harassment of the plaintiff." Blanco v. Success Acad. Charter Sch., Inc., 722 F. Supp. 3d 187, 217 (S.D.N.Y. 2024).

The court in Specht dismissed Plaintiff's intentional infliction of emotional distress cause of action as being retaliated against after refusing to file a false report "simply did not rise to" the level of "utterly intolerable in a civilized community" and, as importantly, because the complaint "levels only conclusory allegations that he suffered emotional distress, allegations that are insufficient to state a claim." Id.

In Gill, where Giuliani was accused of having greatly exaggerated a claim of assault and made ten allegedly defamatory statements about the incident on the tv and radio during which he falsely claimed the plaintiff was "drunk or high" and was a "criminal" who was "taught no respect" among other things, this Court held that "as unusual the alleged conduct…may have been, the described conduct does not meet the high bar necessary to state a claim for intentional infliction of emotional distress". Gill, supra. This Court emphasized that intentional infliction of emotional distressed "is a 'highly disfavored tort under New York law…to be invoked only as a last resort'". Id.

Importantly, "[a]s courts in this Circuit have recognized, defamatory statements generally cannot constitute the extreme and outrageous behavior required for an intentional infliction of emotional distress claim." Dellaportas v. Shahin, 2024 U.S. Dist. LEXIS 141096, at *19 (S.D.N.Y. Aug. 7, 2024). In Dellaportas, prior to dismissing the cause of action, this Court held that allegations that defamation amounted to intentional infliction of emotional distress were "no

more than 'a formulaic recitation of the elements of a cause of action for IIED and will not do'"
and, on top of that, were entirely duplicative of plaintiff's libel claim. Id.  For all of the reasons
described above, Plaintiff's cause of action for intentional infliction of emotional distress must
also be dismissed.

Additionally, Plaintiff's claim for intentional infliction of emotional distress is
duplicative of his defamation claim. See Reid v. McKelvey, No. 22-CV-10708 (JGLC) (OTW),
2024 U.S. Dist. LEXIS 176975, at *12 (S.D.N.Y. Sep. 30, 2024).  Where a claim for defamation
and intentional infliction of emotional distress rely on the same facts, a "separate cause of action
for what are essentially defamation claims should not be entertained" McCollum v. Baldwin, 688
F. Supp. 3d 117, 133 (S.D.N.Y. 2023).

## II.    Plaintiff Fails to Allege a Cause of Action for Negligent Infliction of Emotional Distress

Plaintiff's negligent infliction of emotional distress ("NIED") cause of action is also
entirely duplicative of his cause of action for defamation and intentional infliction of emotional
distress.  The Amended Complaint alleges intentional or reckless, and not negligent acts
supposedly committed by the Defendant.  Courts have dismissed claims under negligent
infliction where the acts were intentional.  See Santana v. Leith, 117 A.D.3d 711, 712, 985
N.Y.S.2d 147, 149 (App. Div. 2nd Dept.);  see also Russo v. Iacono, 73 A.D.2d 913, 913 (App.
Div. 2nd Dept. 1980); James v. Flynn, 132 A.D.3d 1214, 1216 (App. Div. 3rd Dept. 2015).  In
Santana, the plaintiff attempted to extend the statute of limitations by pleading only NIED. The
court, reviewing the plaintiff's allegations in the complaint, found the allegations the defendant
"deliberately and violently attacked [plaintiff] with a hammer, while using racial and ethnic
slurs" were premised on intentional conduct and not negligence" (Id).

10

In <u>Russo</u>, the Second Department found that allegations the defendant "pointed a gun" at the plaintiff, shouting "I got to kill you," and causing plaintiff to become "severely frightened" was an intentional act and insufficient to plead NIED. <u>Russo</u>, 73 AD2d at 913.  In <u>James</u>, the Third Department found allegations that defendant "stalked [plaintiff], entered [plaintiff's] home, and threatened [plaintiff] with a weapon simply cannot support a cause of action for negligent infliction of emotional distress" because the conduct was reckless. <u>James</u>, <u>supra</u>; <u>see also</u>

<u>Friedman v. Self Help Cmty. Servs</u>., No. 11-CV-3210 (NGG) (JMA), 2015 U.S. Dist. LEXIS 32872, at *8 (E.D.N.Y. Mar. 17, 2015) ("plaintiff has failed to plead NIED because he has alleged that the [defendants] intentionally engaged in a conspiracy with the [co] defendants to have him civilly committed"). Given the allegations are intentional, the claim should be dismissed as duplicative of the intentional torts being alleged by Plaintiff.

Additionally, Plaintiff has failed to allege the requisite elements of NIED by failing to allege that Defendant owes him a duty and that he experienced genuine, emotional distress.  "To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm."  <u>Francis v. Kings Park Manor, Inc.</u>, 992 F.3d 67, 70 (2d Cir. 2021).

Courts take additional cautions in cases that lack physical injury because of the obvious risk that allowing recovery for emotional damages alone would result in "fictitious claims…[and] litigation in the field of trivialities and mere bad manners."  <u>Prosser & Keeton, Torts</u> § 12 at 56 (5th ed 1984).  Thus, a claim must possess "some guarantee of genuineness." <u>Taggart v. Costabile</u>, 131 A.D.3d 243, 249 (App. Div. 2nd Dept. 2015).

Determining whether a duty is owed requires a delicate balancing act of a multitude of considerations, including "reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." Palka v. Servicemaster Mgmt. Servs. Corp., 83 N.Y.2d 579, 590 (1994). Here, Plaintiff fails to so much allege that he and Defendant share or shared a relationship in which a special duty of care is owed to him. Indeed, as Defendant's Certification provides, the parties first connected when Defendant was a fourteen-year-old aspiring model and Plaintiff was an adult photographer promising to make her famous. Because his Complaint is entirely silent on whether such a duty exists, this Court should find that he has not sufficiently alleged a cause of action for negligent infliction of emotional distress.

More so, there are certainly no circumstances described in the Amended Complaint which "provid[e] some guarantee of the genuineness of the harm." Guarantees of genuineness "may be satisfied where the particular type of negligence is recognized as providing an assurance of genuineness, as in cases involving the mishandling of a corpse or the transmission of false information that a parent or child had died." Taggart, supra. The Amended Complaint is, rather transparently, an act of retaliation undertaken by Plaintiff against Defendant for sharing her story with The New York Times.

### III.  Plaintiff Fails to Allege a Cause of Action for Defamation

Plaintiff has failed to plead a case for defamation because the statements are not pleaded with particularity; Plaintiff is a public figure and has failed to plead malice; and the court lacks jurisdiction over the claims because Defendant is not a resident of New York and has not transacted business in New York.

### A. The Statements Are Not Pleaded with Particularity and Contain Fabricated Statements

"[D]efamation must be pled with sufficient particularity to withstand a motion to dismiss" Rivera v Capital One Fin. Corp., 2018 NY Slip Op 33045[U], *4 (Sup Ct, NY County 2018)). C.P.L.R. §3016(a) mandates that, in actions to recover damages for defamation, "the particular words complained of shall be set forth in the complaint[.]"  Case law has extended the particularity requirement to necessitate that a plaintiff allege the "time, manner and persons to whom the publication was made." Geddes v Princess Properties Intern., Ltd., 88 AD2d 835 (1st Dept 1982); see also Bell v Alden Owners, Inc., 299 AD2d 207, 209 (1st Dept 2002); Trakis v Manhattanville Coll., 51 AD3d 778, 781 (2d Dept 2008)).

For example, in Bell, the First Department dismissed the action because the complaint alleged statements were made to "certain unspecified individuals, at dates, times and places left unspecified". Bell, 299 AD2d at 208.  In Trakis, the Second Department dismissed a slander claim because the plaintiff "failed to set forth in the complaint the allegedly defamatory remarks… [and] [f]urther he never identified who spoke the remarks, or to whom they were published." Trakis, 51 AD3d at 781 [2d Dept 2008]).

Here, a significant portion of the allegedly defamatory statements are not statements but rather descriptions of alleged statements or how they took place.  Initially, Plaintiff's Second Amended Complaint alleges that "Mr. Lidestri did none of these things. He did not drug Ms. Burns, nor did he sexually assault her in any way." Complt. 81.

The issue with Lidestri's claims, however, is that nowhere within the article does Audrey claim or even suggest that she was drugged. Similarly, nowhere in The New York Times article does Audrey claim that she was paid additional money at all, only that she posted images of

Lidestri and at least 10 $100 bills online when she was 16 years old.  Nowhere in the article does it state the $1,000+ was for her silence, for the sexual acts, for her participation in the photo shoot, or something else.  Beyond that, with regard to the additional payments, The New York Times does not attribute any statements to Audrey, instead looking to images posted on her Facebook account in 2013.  To the extent Lidestri now claims the images themselves are defamatory or defamatory by implication, the one-year statute of limitations has long since run.

Reading the complaint, it is unclear what the exact statements that are actually contained within the Article are defamatory and the subject of the lawsuit.  Plaintiff uses phrases like "[i]n sum and substance" to submit his version of what the article says when in fact the actual words are completely different.

### B.  The Allegedly Defamatory Statements Are Not Published or Authored By Plaintiff

The only quote from Defendant in the complaint was:

"He asked if I wanted to stop, and I couldn't speak," she said. "I was catatonic."

Under New York law, a complaint asserting defamation claims must plausibly allege five elements: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability" Brimelow v. N.Y. Times Co., No. 21-66-cv, 2021 U.S. App. LEXIS 31672, at *3 (2d Cir. Oct. 21, 2021).  Here, the Defendant is not the publisher of the statements contained within the Complaint.  The only quoted text is Defendant's statement of opinion, that she was unable to speak and catatonic.  To the extent the Plaintiff attributes the remainder of the statements in the article to Defendant, he has not alleged, and is unable to show, she is the individual who published them under the law.

**C. The Allegedly Defamatory Statements Do Not Assert Plaintiff Claimed Lidestri Raped Her**

Reading the statements attributed to Defendant demonstrates that the words attributed to her do not accuse Plaintiff of raping her.

> Mr. Lidestri offered her money beyond what she had been paid for the photo shoot, Ms. Burns said. He then sexually assaulted her with his hands and mouth, she said.
> "He asked if I wanted to stop, and I couldn't speak," she said. "I was catatonic."

Nowhere in the Amended Complaint is Defendant quoted as giving her age when the incident occurred and The New York Times does not specify when this particular sexual act took place. According to the article, Defendant began working for Plaintiff when she was 14 and "later" traveled to New York for a photoshoot with him.  While the article does make mention of pictures of money and Plaintiff taken by Defendant and posted on her Facebook group when she was 16, it is not clear that this is when the alleged sexual act took place.  Admittedly, Plaintiff's Amended Complaint is entirely silent as to whether an act took place and, if it did, when. Plaintiff merely states that the following chronology is false "when she was a child, James Lidestri drugged her, raped her and paid her off" but as emphasized above, Defendant never said Plaintiff drugged her.  He did, however, sexually assault her when she was a minor, which Plaintiff has not specifically denied.

Looking to the article, the only words attributed directly to Defendant are "'He asked if I wanted to stop, and I couldn't speak,'" she said.  'I was catatonic.'"  Looking at the statement, it would appear that Defendant is suggesting Plaintiff asked for her consent.  "Courts are not to render statements actionable by giving them a "strained or artificial construction." <u>Qureshi v St. Barnabas Hosp. Ctr.</u>, 430 F Supp 2d 279, 287 [SDNY 2006]).

The only remaining sentence of the paragraph is "Mr. Lidestri offered her money beyond what she had been paid for the photo shoot, Ms. Burns said" a statement which is neither verbatim what Defendant said nor defamatory.

### D. Plaintiff's Silence Leads to Pleading Deficiencies

Without providing what it is, exactly, that Lidestri does for a living, he claims Defendant's statements are defamatory per se because they injure him in his trade, business, or profession. While Plaintiff's Amended Complaint is wholly silent as to Lidestri's career path, The New York Times has identified him as once running a subscription-based website on which he posted photographs of underage girls. It is unclear how these allegations would harm his professional reputation given these facts.

### E. Many of the Statements are Not Capable of a Defamatory Meaning, Not Concerning Plaintiff, and are True

It is also necessary that the allegedly false statement of fact be concerning Plaintiff as opposed to some other third party. In this Complaint, Plaintiff cites entire paragraphs that are either not capable of a defamatory meaning, true, or not concerning him. These include:

> At the time, she said, her life was chaotic, and she had lived for a while with her mother in a shelter in Oklahoma.

> She started working for Mr. Lidestri when she was 14, she recalled, and later traveled to New York with her mother. Photos she shared on Facebook from the trip included separate images of Mr. Lidestri and at least 10 $100 bills. They were posted in April 2013, when she was 16.

"On a motion to dismiss a defamation claim, the court must decide whether the statements, considered in the context of the entire publication, are "reasonably susceptible of a

defamatory connotation," such that the issue is worthy of submission to a jury." Stepanov v Dow Jones & Co., Inc., 120 AD3d 28, 34 (1st Dept 2014)).  "If the words are 'not reasonably susceptible of a defamatory meaning, they are not actionable, and cannot be made so by a strained and artificial construction'" Jacobus v Trump, 55 Misc 3d 470, 474 (Sup Ct 2017), affd, 156 AD3d 452 (1st Dept 2017)).  Further, "[i]n order to establish a prima facie case of defamation, plaintiffs must show that the matter published is "of and concerning" them."  Three Amigos SJL Rest., Inc. v CBS News Inc., 28 NY3d 82, 86 [2016]). As the Court held:

> Although it is not necessary for the plaintiffs to be named in the publication, they must plead and prove that the statement referred to them and that a person hearing or reading the statement reasonably could have interpreted it as such (see id.; *Prosser & Keeton, Torts § 111 at 783* [5th ed. 1984] ). This burden is not a light one, and the question of whether an allegedly defamatory statement could reasonably be interpreted to be "of and concerning" a particular plaintiff is a question of law for the courts to decide
> Id.

The Court of Appeals of New York in Three Amigos SJL Rest., Inc. held that a defamatory statement which referenced a strip club's alleged mafia ownership and indicated it was filled with foreign exotic dancers brought to the U.S. through scam marriages was not "of and concerning" the company hired to provide management and talent services to the strip club because the statement "could not reasonably have been understood to mean" that the staffing company was involved with members of organized crime. Id.

The statements that Defendant's life was chaotic are not of and concerning the Plaintiff.  Statements that Plaintiff travelled to New York when she was 14 to meet Plaintiff are also not capable of having a defamatory meaning.  However, even if the court was to find they were, Defendant possesses ample evidence demonstrating the veracity of many of the limited representations made by The New York Times.  Date-stamped images Defendant uploaded to her

Facebook when she was sixteen years old show Plaintiff taking Defendant on a tour of Manhattan including, disturbingly, a trip to the M&M Store in Times Square – every child's dream.  Another image shows a Juicy Couture bag sitting on a hotel bed with ten one hundred dollar bills lined up in front of a leopard print pillow.  The 117-image album is entitled "NYC modeling trip!" and was uploaded on April 21, 2013.

As Defendant has averred, her birthdate is July 1, 1996; accordingly, at the time she uploaded the images, she was 16 years old.  Additionally, documentary evidence demonstrates that she traveled to New York and it was after she was 14.





 

See Exhibit 6.

Given the statements are true and not capable of a defamatory meaning, the cause of action should be dismissed.

**F.  The Statements Are Nonactionable because Plaintiff is a Public Figure and the Complaint Fails to Adequately Allege Malice.**

The First Amendment has prohibited limited public figures from recovering damages for a defamatory falsehood unless "he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279–80 (1964). The Supreme Court later expanded this rule to include public figures, in addition to public officials, Curtis Publ'g Co. v. Butts, 388 U.S. 130, 153 (1967); Gertz v. Robert Welch, Inc., 418 U.S. 323, 333–34 (1974), and the law is

now clear that a public figure libel plaintiff bears the burden of proof on actual malice, a burden he must carry by "demonstrat[ing] with clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubts as to the truth of his statement." Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 511 n.30 (1984); see also St. Amant v. Thompson, 390 U.S. 727, 731 (1968) ("There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."); Biro v. Condé Nast, 807 F.3d 541, 544, aff'd 622 F. App'x 67 (2d Cir. 2015).

Plaintiff's complaint uses "actual malice buzz-words" (Id.) to allege that Defendant's "conduct was committed knowingly, intentionally, willfully, wantonly and maliciously" but fails to allege the proper malice standard.

### 1. Plaintiff is a Public Figure.

The Complaint does not deny Plaintiff is a public figure. As a public figure or public personality, Plaintiff was required to meet certain pleading requirements, to be discussed in the section below.  "A public figure is someone with 'general fame or notoriety in the community, and pervasive involvement in the affairs of society'" Coleman v Grand, 523 F Supp 3d 244, 255 (EDNY 2021).

> There are two types of public figures: general and limited purpose public figures. General purpose public figures are those who "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes," and must therefore meet the actual malice standard for all libel claims…To qualify, the person's fame must be 'very great; the individual must be a 'household name' on a national scale Id.

Conversely, limited purpose public figures

> 'may invite publicity only with respect to a narrow area of interest' and
> may fairly be considered public figures only where the alleged defamation
> relates to the publicity they sought…One becomes such a limited-purpose
> public figure through some 'purposeful activity,' by which the individual
> has 'thrust' themself ' into the public spotlight and sought a continuing
> public interest in [their] activities"... In that case, an otherwise private
> individual may properly be considered 'a public personality'
> <u>Gottwald v Sebert</u>, 40 NY3d 240, 251-252 (2023)

Plaintiff's Amended Complaint fails to specify any information about Lidestri.  However,
at the time the article was published, Lidestri was a self-described "tech entrepreneur" who ran
"photography sites." <u>See</u> Exhibit. 1 pg. 8).  Lidestri also describes himself as a "renowned
technology executive and pioneer in the SaaS industry" who is "[r]ecognized as one of the
founders of the SaaS industry by *Computer Reseller News*". <u>See</u> Exhibit 4 and 5.

In 2013, one New York court held that a journalist who published countless articles had
"voluntarily injected herself into the controversial debate on whether HIV causes AIDS" had
"'projected her name and personality before readers of nationally distributed magazines to
establish her reputation as a leading authority' in this area" <u>Farber v Jefferys</u>, 103 AD3d 514,
515 (1st Dept 2013).  While the journalist in <u>Farber</u> may have published many articles about
HIV, Plaintiff here thrust himself into the online child pornography business and tech business
that made him the subject of the particle.  Based on his own conduct, Plaintiff is a public figure
and was required to allege malice.

Plaintiff has amended his complaint to claim he is not a public figure and is only a
"moderately successful businessman[.]" <u>Complt. 9</u>.  Lidestri compares his Linkedin profile has
slightly more than 1,000 connections to those of Mark Cuban and Alina Habba for the
proposition he is not a public figure. <u>Complt. 12</u>.  However, Plaintiff was a limited public figure
by virtue of his participation in the first New York Times article dated November 10, 2024,
which was published almost a month and a half prior to the subject article. Additionally, by his

own admission, Lidestri both "voluntarily injected himself/herself into a public controversy related to the subject of the litigation" and "maintained regular and continuing access to the media." <u>Catania v Liriano</u>, 2021 NY Slip Op 34027[U] [Sup Ct, Bronx County 2021]. According to the Complaint, Lidestri and his attorneys had multiple conversations with the imes reporters in the five days leading up to the publication of the Lidestri article." <u>Complt.</u> 78. Lidestri therefore continue to insert himself into the story and is a limited public figure for those purposes.

### 2. Plaintiff has not Plausibly Alleged Malice.

Plaintiff can only recover for defamation upon "clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." <u>Gertz</u>, 418 U.S. at 342. This standard, referred to as "actual malice," is measured by "what the defendant actually believed and not by 'what a reasonably prudent man would have published or would have investigated before publishing.'" <u>Goldblatt v. Seaman</u>, 225 A.D.2d 585, 586 (2d Dep't 1996) (quoting <u>St. Amant</u>, 390 U.S. at 731). On a motion to dismiss, "a public-figure plaintiff must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice." <u>Biro</u>, 807 F.3d at 546 (citation omitted). Additionally, "the defendant must have made the false publication with a high degree of awareness of... probable falsity, or must have entertained serious doubts as to the truth of his publication." <u>Prince v The Intercept</u>, 2023 US Dist LEXIS 119974, at *14 (SDNY July 12, 2023, No. 21-CV-10075 [LAP]).

The Supreme Court has provided examples of the facts that can support a claim for actual malice, such as where a story is fabricated by the defendant or is based wholly on "unverified" or "anonymous" sources; where the "allegations are so inherently improbable that only a reckless

man would have put them in circulation;" and "where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." St. Amant, 390 U.S. at 732.

Plaintiff does not even attempt to plead actual malice and has made no attempt to meet the heightened pleading standard. Plaintiff's defamation claim should therefore be dismissed.

### G. New York anti-SLAPP Law Mandates Dismissal.

New York's anti-SLAPP protects victims like Audrey from these type of actions. The law states:

> [I]n an action involving public petition and participation, damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue.
> N.Y. Civ. Rights Law § 76-a(2).

The law applies to "[a]n 'action involving public petition and participation' is a claim based upon: (1) any communication in a place open to the public or a public forum in connection with an issue of public interest." 1st Amendment Praetorian v. N.Y. Times Co., No. 1:23-cv-00012 (MKV), 2025 U.S. Dist. LEXIS 59133, at *19 (S.D.N.Y. Mar. 28, 2025). As the court in 1st Amendment Praetorian held, "[t]his action clearly involves a "communication in a place open to the public or a public forum," because all of the allegedly defamatory statements were alleged to have been published online by the New York Times[.]" Id. More so, the article involves an issue of public interest, specifically about men like Lidestri who use the internet to abuse children. As such, New York's anti-SLAPP law applies, and thus Plaintiff must sufficiently plead actual malice to survive the motion to dismiss.

As discussed above, "[a]ctual malice requires showing that the statements were made with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." Id. [internal quotations omitted]. Thus, the plaintiff needs "to allege facts, that if proven true, show that the publisher actually possessed a high degree of awareness of the statements' probable falsity." Id.

Here, Lidestri alleges nothing but wholly conclusory allegations of malice by Burns. The failure to plead actual malice is fatal to the claims and the Complaint should be dismissed.

## H. The Amended Complaint Should be Dismissed for Lack of Jurisdiction over Defendant

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of establishing personal jurisdiction. Fischer v. Stiglitz, No. 15-CV-6266 (AJN), 2016 U.S. Dist. LEXIS 74842, at *6 (S.D.N.Y. June 8, 2016). Defendant is not alleged to be domiciled in New York or have any physical residence here (Complt. ¶5). "Personal jurisdiction over a non-resident defendant in a diversity action is governed by the law of the state in which the federal district court sits, which, in this case, is New York" Satanic Temple, Inc. v. Newsweek Magazine LLC, 661 F. Supp. 3d 159, 166 (S.D.N.Y. 2023). Accordingly, Plaintiff must rely solely on New York's long-arm statute, CPLR 302(a), for jurisdiction.

New York's long-arm statute authorizes a court to exercise personal jurisdiction over a non-domiciliary who, with respect to the specific transaction at issue in the lawsuit:

> (1) transacts any business within the state . . .; or (2) commits a tortious act within the state, *except as to a cause of action for defamation of character arising from the act*; or (3) commits a tortious act without the state causing injury . . . within the state, except as to a cause of action for defamation of character arising from the act.
> CPLR 302(a) (emphases added).

Importantly, sections 302(a)(2) and (3), which permit jurisdiction over tortious acts committed in New York and those committed outside New York that cause injuries within the state, exempt defamation claims.  Best Van Lines, Inc. v Walker, 490 F3d 239, 244 (2d Cir 2007).  Plaintiff must show that jurisdiction exists under, under CPLR 302(a)(1) for their defamation claim to survive.

1. **Plaintiff Fails to Obtain Jurisdiction over Defendant  Pursuant to CPLR 302(a)(1)**

In order to obtain jurisdiction over a defendant pursuant to CPLR 302(a)(1), a plaintiff must satisfy a two-part inquiry.  The "first inquiry is whether defendant conducted sufficient activities to have transacted business within the state; the second inquiry is whether plaintiff's claims arise from the transactions".  English v Avon Prods., Inc., 206 AD3d 404, 406 [1st Dept 2022]).  "New York courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation".  SPCA of Upstate NY, Inc. v Am. Working Collie Assn., 18 NY3d 400, 405 [2012]).  This is because the legislature ensured that:

> particular care must be taken to make certain that non-domiciliaries are not haled into court in a manner that potentially chills free speech without an appropriate showing that they purposefully transacted business here and that the proper nexus exists between the transaction and the defamatory statements at issue
> Id.

Transaction of business must be more than "sporadic emails" and a "few meetings" in New York. See Black v Phoenix Cayman Ltd., 224 AD3d 494, 494 (1st Dept 2024).  Here, Plaintiff has failed to allege any transaction of business between the Defendant and Plaintiff that would confer jurisdiction.  Plaintiff merely cites to 28 U.S.C. § 1332 without going into any additional significant details.

Plaintiff alleges that Audrey transacted business in New York because "derived a substantial portion of her income via interstate commerce as a model on OnlyFans.com, a website owned by Fenix International Limited, which is based in the United Kingdom." Complt. 5. Lidestri's inclusion of the Onlyfans page appears solely designed to embarrass Audrey, as there is no basis for jurisdiction in New York simply because Defendant transacts business with a **European company**.

The Defendant's alleged conduct is not sufficient to assert that she "transacted business" in New York. Even if Plaintiff manufactures some transaction of business claims, he will be unable to establish an "articulable nexus between Defendant's New York activities and the cause[s] of action" Kingstown Capital Mgt. L.P. v CPI Prop. Group, S.A., 205 AD3d 467, 468 (1st Dept 2022).

**2.    Plaintiff Has Not Alleged Defendant Was Present in New York to Establish Jurisdiction Pursuant to CPLR 302(a)(2)**

Plaintiff is equally unable to establish jurisdiction over Defendant pursuant to (a)(2). CPLR 302 (a) (2) permits New York courts to exercise personal jurisdiction over any non-domiciliary, who directly or through an agent, committed a tort within New York. To invoke New York's long-arm jurisdiction pursuant to CPLR 302(a)(2), we have "traditionally required the defendant's [physical] presence [in New York] at the time of the tort" SOS Capital v Recycling Paper Partners of PA, LLC, 220 AD3d 25, 33 (1st Dept 2023).

Here, Plaintiff has not alleged that Defendant was physically present when the supposed torts were committed. As such, Plaintiff cannot use CPLR 302(a)(2) to obtain jurisdiction over the Defendant.

### 3.  Defendant Does not Derive Substantial Revenue from New York

CPLR 302(a)(3) provides that "a court may exercise personal jurisdiction over any non-domiciliary…who in person or through an agent….commits a tortious act without the state…causing injury within the state…if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." As with CPLR 302(a)(2), claims for defamation are specifically excluded from CPLR 302(a)(3).

Once again, Plaintiff fails to allege Defendant engaged in business within New York or derives substantial revenue from interstate or international commerce.  As such, the Amended Complaint should be dismissed.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant respectfully requests this court grant her Motion to Dismiss in its entirety.

Dated: June 9, 2025
　　　 New York, New York

　　　　　　　　　　　　　VERIDIAN LEGAL P.C.

　　　　　　　　　　　　　By: _____/Daniel S. Szalkiewicz_____
　　　　　　　　　　　　　Daniel S. Szalkiewicz
　　　　　　　　　　　　　Cali P. Madia
　　　　　　　　　　　　　*Attorneys for Defendant*