UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JAMES LIDESTRI,                                                            25 Civ. 1166 (JHR)

                           Plaintiff,
  -v.-

AUDREY BURNS,

                           Defendant.
-----------------------------------------------------------x

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**BRILL LEGAL GROUP, P.C.**
*Attorneys for Plaintiff*
Peter E. Brill
176 Lexington Avenue
Suite O
New York, NY 10016
(212) 233-4141


Click or tap here to enter text.**Table of Authorities**

**Cases**

*Alfaro v. Wal-Mart Stores, Inc.*,
 210 F.3d 111 (2d Cir. 2000) .................................................................................................... 1

*Biro v Condé Nast*,
 807 F3d 541 [2d Cir 2015] ...................................................................................................... 6

*Brodie v. Green Spot Foods, LLC*,
 503 F. Supp. 3d 1 (S.D.N.Y. 2020) .......................................................................................... 1

*Catania v. Liriano*,
 2021 NY Slip Op 34027[U] [Sup Ct, Bronx County 2021] ..................................................... 5

*Eckhaus v. Alfa-Laval, Inc.*,
 764 F. Supp. 34 (S.D.N.Y. 1991) ............................................................................................. 3

*Enigma Software Group USA, LLC v. Bleeping Computer LLC*,
 194 F.Supp 3d 263, U ............................................................................................................. 5

*Francis v. Kings Park Manor, Inc.*,
 992 F.3d 67 (2d Cir. 2021) ...................................................................................................... 1

*George Reiner & Co. v. Schwartz*,
 41 NY2d 648 (1977) ................................................................................................................ 8

*Gross v. New York Times Co.*,
 82 N.Y.2d 146 (1993) ......................................................................................................... 4, 5

*Immuno AG. v. Moor-Jankowski*,
 77 N.Y.2d 235 (1991) .............................................................................................................. 4

*In re Sept. 11 Prop. Damage & Bus. Loss Litig.*,
 468 F.Supp.2d 508 (S.D.N.Y. 2006) ........................................................................................ 2

*King v. Tanner*,
 142 Misc. 2d 1004, 539 N.Y.S.2d 617 (N.Y. Sup. Ct. 1989) .................................................. 3

*Legros v Irving*,
 38 AD2d 53 (1st Dept 1971) .................................................................................................... 7

*Levin v McPhee*,
 119 F3d 189 [2d Cir 1997] ...................................................................................................... 4

*McGowan v Smith*,
 52 NY2d 268 (1981) ................................................................................................................ 7

*Montgomery v Minarcin*,
 263 AD2d 665 (3d Dept 1999) ................................................................................................ 7

*Ostrowe v. Lee*,
    256 N.Y. 36, 175 N.E. 505 (1931) ........................................................................................ 3

*Purdy v. Pub. Adm'r of Westchester Cnty.*,
    72 N.Y.2d 1, 526 N.E.2d 4, 530 N.Y.S.2d 513 (N.Y. 1988) ................................................... 2

*Supreme Court, in Milkovich v. Lorain Journal*,
    497 U.S. 1 (1990) ................................................................................................................ 4

**Statutes**

CPLR 302 ........................................................................................................................... 7, 9

**Preliminary Statement**

Plaintiff offers the following in opposition to Defendant's Motion to Dismiss and suggests that the Court view this diversity action as a private dispute between two private parties on a matter that would not be of public interest had Defendant not created a false narrative to create media scrutiny of, and opprobrium against, Plaintiff. In that light, with Defendant neither a general nor limited public figure, Plaintiff's defamation claim against Defendant should survive Defendant's Motion to Dismiss.

**Argument**

**Intentional Infliction of Emotional Distress**

Plaintiff concedes that he did not plead additional facts against Defendant beyond those that were included in the defamation claim against her, and thus the Intentional Infliction of Emotional Distress claim cannot survive under New York law. *See Jacob v. Lorenz*, 21 Civ. 6807 (ER) (S.D.N.Y. June 21, 2023).

**Negligent Infliction of Emotional Distress**

Plaintiff disagrees that Defendant cannot be held liable under a negligence theory, as she was in a contractual business relationship with him for many years. Under New York law, negligence requires "a breach of a duty owed to the plaintiff, "proximate cause between the conduct and the injury, damages, and, in the case of negligent infliction of emotional distress, severe emotional distress*." Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 6 (S.D.N.Y. 2020); *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021).

The question of the existence and scope of a defendant's duty is a legal issue for the court to resolve. *Alfaro v. Wal-Mart Stores, Inc.,* 210 F.3d 111, 114 (2d Cir. 2000). As a general rule, New York law does not impose upon persons the duty to protect others from injuries caused by

1

third parties. See Purdy v. Pub. Adm'r of Westchester Cnty., 72 N.Y.2d 1, 526 N.E.2d 4, 6-8, 530 N.Y.S.2d 513 (N.Y. 1988). However, such a duty may be imposed where "a special relationship exists between the defendant and the plaintiff, creating an obligation on the part of the defendant to protect the plaintiff from harm inflicted by the third party." *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 468 F.Supp.2d 508, 525 (S.D.N.Y. 2006), aff'd sub nom. Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P., 737 F.3d 166 (2d Cir. 2013).

Plaintiff and Defendant were in a contractual business relationship for years. Inherent in this contractual relationship was a convenant of good faith and fair dealing, which creates a duty, though Plaintiff concedes that Defendant's actions were intentional. The false accusation of sexual assault is certainly of significant enough gravity to create the emotional distress.

## Defamation

A. **Particularity**

In his Motion to Dismiss, Defendant focuses on what Plaintiff did not say in his Second Amended Complaint rather than what he did say. Plaintiff has pleaded defamation with particularity.

On page 11 of the complaint, the caption of Ms. Burns' photograph reads, "Audrey Burns said she was sexually assaulted as a minor after she traveled for a photo shoot," referring only to her trip to Mr. Lidestri's house. On page 12 of the complaint, Ms. Burns' published account reads, "Another woman, Audrey Burns, now 28, said Mr. Lidestri sexually assaulted her when she visited him in New York for a photo shoot." On page 13 of the complaint Ms. Burns' account continues, "Mr. Lidestri offered her money beyond what she had been paid for the photo shoot, Ms. Burns said. He then sexually assaulted her with his hands and mouth, she said. 'He asked if I wanted to stop, and I couldn't speak,' she said. 'I was catatonic.'"

[2]

Defendant argues that "it is unclear what the exact statements that are actually contained within the Article are defamatory and the subject of the lawsuit." Memorandum of Law (Dkt # 19-3, p.14). Plaintiff does not concur. The defamatory statements are in bold and italicized in the complaint. The rest of the paragraphs offer context.

B. **Publication/Authorship**

Defendant suggests that she is not the author of the defamatory statements, and then conflates that argument with a separate suggestion that the statements are opinions.

<u>Authorship</u>

As to authorship of the defamatory statements, the statements are by Defendant, whether uttered in the public square, on Facebook, or through the medium of the *Times*. Though Defendant narrows her argument to the single quoted phrase: *"He asked if I wanted to stop, and I couldn't speak," she said. "I was catatonic,"* the defamatory statements should not be so narrowly construed, as all of the words Plaintiff alleges to be defamatory are attributed to Defendant in the *Times* article. Most importantly, Defendant does not deny saying them. She is the author of those false statements. As this is a purely private dispute, falsity is presumed and Defendant bears the burden of pleading and proving truth. See *Eckhaus v. Alfa-Laval, Inc.*, 764 F. Supp. 34, 37 n.4 (S.D.N.Y. 1991); *King v. Tanner*, 142 Misc. 2d 1004, 1010, 539 N.Y.S.2d 617, 622 (N.Y. Sup. Ct. 1989).

<u>Publication</u>

Publication in this context has been defined far more broadly than Defendant suggests as well. Under New York defamation law, "publication is a term of art. . . . A defamatory writing is not published if it is read by no one but the one defamed. Published it is, however, as soon as read by any one else." *Ostrowe v. Lee*, 256 N.Y. 36, 38, 175 N.E. 505 (1931) (Cardozo, C.J.).

[3]

**Opinion**

As to whether any or all of Defendant's false statements were opinions, putting aside the obvious initial observation that Defendant did not say "I believe I was unable to speak" or "I believe I was catatonic" or something similar, nothing in her statements suggest that they are expressions of her belief at the time of the occurrence or at the time of her statement to the *Times.* They were statements of fact.

New York courts have developed a three-stage inquiry to distinguish statements of fact from statements of opinion. The first stage of inquiry involves a consideration of whether the specific language used has a precise and readily understood meaning. Second, the court determines whether the statements are susceptible of being proven false. At the third stage, the court evaluates whether the context of the statements signals to the reader that what is being conveyed is likely to be opinion rather than fact. *Gross v. New York Times Co.,* 82 N.Y.2d 146, 154 (1993)*; Levin v McPhee,* 119 F3d 189, 196 [2d Cir 1997]). The Supreme Court, in *Milkovich v. Lorain Journal*, 497 U.S. 1 (1990), explained that the United States Constitution offers no wholesale protection for so-called "expressions of opinion" if those expressions imply assertions of objective fact.  *Id.* at 18.

The New York Court of Appeals, however, has expressed its belief that "an analysis that begins by looking at the content of the whole communication, its tone and apparent purpose better balances the values at stake than an analysis that first examines the challenged statements for express and implied factual assertions, and finds them actionable unless couched in loose, figurative or hyperbolic language." *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 255, 566 (1991).

[4]

"…[T]he thrust of the dispositive inquiry under both New York and constitutional law is 'whether a reasonable [reader] could have concluded that [the publications were] conveying facts." *Gross*, 82 N.Y.2d at 153.

Here, either analysis leads to the conclusion that Defendant was conveying facts.

### **Plaintiff is Neither a General nor Limited Purpose Public Figure**

Plaintiff in no way qualifies as a public figure, either in a general or limited way. But for Defendant's false and defamatory allegations, Plaintiff would not have ever been in the public eye. He has neither invited the public's attention nor did he have it prior to the publication of the *Times* articles. Defendant's suggestion that Plaintiff is a limited public figure due to the fact that he was quoted in one additional article, by the same reporters, in the same publication, on the same topic as the article in which Defendant falsely accused him of sexually assaulting her is unavailing.

The language following the excerpt of *Catania v. Liriano*, 2021 NY Slip Op 34027[U] [Sup Ct, Bronx County 2021], the only case that Defendant cites for this purpose is instructive:

> There is a four-part test to determine whether a plaintiff is a limited purpose public figure. To qualify, a plaintiff must have: 1) successfully invited public attention to his/her views in an effort to influence others prior to the incident which is the subject of the litigation; 2) voluntarily injected himself/herself into a public controversy related to the- subject of the litigation; 3) assumed a position of prominence in the public controversy; and 4) maintained regular and continuing access to the media. See *Enigma Software Group USA, LLC v. Bleeping Computer LLC*, 194 F.Supp 3d 263, U.S. District Court, S.D.N.Y. (2016).

Plaintiff did none of these things, and Defendant's limited excerpt of a New York Supreme Court quote of a Southern District decision does not change the four-prong test required. At best, he briefly maintained contact with two New York Times reporters in order to address what was

[5]

clearly going to be a highly damaging upcoming story and ended that contact upon publication of the article.

As Plaintiff is not a public figure, he is not required to allege malice, though he has.

### New York's Anti-SLAPP Law

For the first time here, Defendant raises New York's anti-SLAPP law. While Plaintiff agrees with Defendant and Judge Vyskocil that the pages of the *New York Times* involve "communication in a place open to the public or a public forum," he does not agree that this matter would have qualified as a matter of public interest had Defendant's lies not made it so. The fact that Defendant engaged in conversations with reporters for the *Times* in which she made defamatory statements about Plaintiff, knowing full well that those statements would become a part of an article in the *Times* where those false statements would reach millions, should not now allow her to use New York's anti-SLAPP law as a shield against having to pay for the consequences of her actions. That would be an absurd result.

Nonetheless, Plaintiff has alleged malice, and believes that malice can be inferred from the factual portion of the complaint. See *Biro v Condé Nast*, 807 F3d 541 [2d Cir 2015].

### Jurisdiction

Finally, Plaintiff maintains that he has established jurisdiction over Defendant in New York. As noted in the Second Amended Complaint, on page 7, paragraphs 40 and 41,

> 40. Ms. Burns and her mother flew into New York City on Thursday, April 18, 2013 and Mr. Lidestri transported them to his home studio in Dutchess County.
>
> 41. Prior to starting the photoshoot, while in the Dutchess County studio, Ms. Burns and her mother signed the contract and approved of all the attire to be worn throughout the day, as required.

[6]

Furthermore, Plaintiff states, in paragraphs 70 through 72,

> 70. Mr. Lidestri's company continued to publish Ms. Burns' photos and videos on its website for years after the photoshoots.
>
> 71. Mr. Lidestri's company continued to pay Ms. Burns her portion of the profits as per her contract after the photoshoots as well.
>
> 72. Each of those transactions originated in New York State, and were paid through the same Wells Fargo Bank in Dutchess County.

In New York defamation cases, for purposes of CPLR 302(a)(1) jurisdiction, courts seem to apply an "operative facts" test, i.e., where did the operative facts that gave rise to the defamatory statement take place, and is there a sufficient nexus between the state and the individual alleged to have made the statement?

For example, in *Legros v Irving*, the Appellate Division, First Department held that a defamatory statement contained in a book, where the significant actions culminating in the publication of the book occurred in New York, had sufficient ties to New York to establish jurisdiction. *Legros v Irving*, 38 AD2d 53 (1st Dept 1971).

In *Montgomery v Minarcin*, the Court held that the defendant engaged in purposeful activity in New York State which was directly related to and formed the basis of plaintiff's causes of action so as to be deemed to have transacted business in this State within the intendment of CPLR 302(a)(1), despite the alleged defamatory statement being made elsewhere. *Montgomery v Minarcin*, 263 AD2d 665 (3d Dept 1999).

*McGowan v Smith* described the test as whether "the transitory business actually transacted here was sufficiently related to the subject matter of the lawsuit to justify the exercise of in personam jurisdiction under CPLR 302." *McGowan v Smith*, 52 NY2d 268 (1981).

*George Reiner & Co. v. Schwartz* may be most on point here, though. There, "Schwartz was physically present in New York at the time the contract, establishing a continuing relationship between the parties, was negotiated and made and, the contract, made in New York, was the transaction out of which the cause of action arose. Additionally we note that by such holding we have not overstepped constitutional bounds, for the acts upon which we rely, the defendant's coming into New York purposefully seeking employment, his interview and his entering into an agreement with a New York employer which contemplated and resulted in a continuing relationship between them, certainly are of the nature and quality to be deemed sufficient to render him liable to suit here. There can be no question that, by his acts, defendant has purposefully availed himself of the privilege of conducting activities in our jurisdiction, thus invoking the benefits and protection of our laws….Rather, we have before us, as has been noted, a day which included interviewing, negotiating and contracting -- the purposeful creation of a continuing relationship with a New York corporation" *George Reiner & Co. v. Schwartz*, 41 NY2d 648 (1977) [interior citations omitted].

In 2013, and for years afterward, Defendant was in business with a New York corporation owned by Plaintiff. This cause of action arises out of their first meeting, a meeting at which their contract was negotiated in Dutchess County. As noted above, Ms. Burns and her mother flew into New York City on Thursday, April 18, 2013 and Mr. Lidestri transported them to his home studio in Dutchess County. Prior to starting the photoshoot, while in the Dutchess County studio, Ms. Burns and her mother signed the contract and approved of all the attire to be worn throughout the day, as required.

Defendant maintained a business relationship with Plaintiff's New York corporation for years. Mr. Lidestri's company continued to publish Ms. Burns' photos and videos on its website

for years after the photoshoots. Mr. Lidestri's company continued to pay Ms. Burns her portion of the profits as per her contract after the photoshoots as well. Each of those transactions originated in New York State, and were paid through the same Wells Fargo Bank in Dutchess County.

Now, Defendant has made a series of false claims about the events of the first business meeting between the parties but claims that New York courts lack jurisdiction over her under CPLR 302(a)(1). That is inaccurate, as shown above.

This is the very type of contractual relationship that the *George Reiner* court determined was appropriate for New York's long-arm jurisdiction, and we ask this Court to apply that standard here.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendant's Motion to Dismiss, except as to where Plaintiff has conceded.

Dated: July 14, 2025
      New York, New York

**BRILL LEGAL GROUP, P.C.**
*Attorneys for Plaintiff*

By: _____
Peter E. Brill

[9]